**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA

                         Plaintiff,                1:23-CV-1238
                                                (AMN/MJK)

v.

$6,548.00 in U.S. Currency,

                         Defendant.

---

**APPEARANCES:**                                **OF COUNSEL:**

**HON. CARLA FREEDMAN**                **ELIZABETH A. CONGER, ESQ.**
United States Attorney for the             Assistant United States Attorney
Northern District of New York
100 South Clinton St.
Syracuse, NY 13261-7198
*Attorneys for Plaintiff*

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

On October 4, 2023, Plaintiff the United States of America commenced this action via Verified Complaint for forfeiture *in rem* seeking forfeiture of $6,548.00 as property traceable to the proceeds of offenses in violation of 21 U.S.C. § 881(a)(6) ("Defendant Currency") and pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules" or "Supp. R."). *See* Dkt. No. 1. Presently before the Court is Plaintiff's Motion for Default Judgment and Final Order of Forfeiture under Rule 55(b)(2) of the Federal Rules of Civil Procedure and General Order #15 of the United States District Court for the Northern District of New York. *See* Dkt. No. 10-1 ("Motion"). For the reasons that follow,

1

Plaintiff's Motion is granted.

## II.   BACKGROUND

### A. Plaintiff's Allegations[1]

This matter arose in connection with a narcotics investigation conducted by the Glens Falls Police Department. *See* Dkt. No. 1 ¶ 7. On or about August 2, 2022, police were conducting surveillance on 30 Davis Street in Glens Falls, New York, following reports from nearby residents that narcotic sales may be ongoing at the residence. *Id.* ¶¶ 7-8. During the surveillance, a man later identified as Anthony Harrison-Sanders was seen leaving the residence wearing a black backpack and getting into a 2014 gray Nissan Maxima, which police followed after Harrison-Sanders failed to signal as he pulled away from the residence. *Id.* ¶¶ 8-10. Harrison-Sanders then failed to signal again more than 100 feet from an intersection and failed to stop at a stop sign, prompting police to conduct a traffic stop. *Id.* ¶¶ 11-12. During the stop, Harrison-Sanders positively identified himself by providing his driver's license, which police learned was suspended after connecting with dispatch. *Id.* ¶¶ 13, 17. Harrison-Sanders was unable to maintain a consistent story justifying his presence at 30 Davis Street, and allegedly tried to block police's view of the vehicle's backseat. *Id.* ¶¶ 14-16. According to Plaintiff, Harrison-Sanders first stated he was at the residence to visit his uncle, but later stated he was visiting a "distant relative" after police questioned which side of the family his uncle was on. *See* Dkt. No. 1 ¶ 14-15.

Police placed Harrison-Sanders in custody and conducted a search of the vehicle after a New York State Trooper arrived with a K9. *Id.* ¶¶ 18-19. During the search, the K9 alerted to the presence of narcotics near the driver's seat and passenger-side floorboard. *Id.* ¶ 20. The police

---

[1] The facts are drawn from the Verified Complaint. *See* Dkt. No. 1. The allegations therein are deemed admitted and assumed to be true for purposes of this Motion. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

located U.S. currency totaling $6,100 in a small binder in the vehicle's glove compartment, which was rubber banded into six "stacks." *Id.* ¶ 21.[2]  The police also found $448 on Harrison-Sanders' person.  *Id.* ¶ 22.  Finally, in the backseat, officers located the backpack Harrison-Sanders was seen wearing as he exited the 30 Davis Street residence, which contained a digital scale with a white powdery substance on its surface that was subsequently tested and identified as cocaine.  *Id.* ¶¶ 24-25.  The vehicle was also observed by police to have "aftermarket modifications, including electrical components consisting of wiring harnesses, taped wires, and a device that was zip-tied to the dashboard."  *Id.* ¶ 26.  Harrison-Sanders was arrested, taken into custody, charged, and subsequently pled guilty to criminal use of drug paraphernalia in New York State court.  *Id.* ¶¶ 27-28.

### B.  Procedural Background

On October 4, 2024, Plaintiff filed its Verified Complaint for forfeiture *in rem*, seeking (*inter alia*) a declaration that the Defendant Currency be forfeited and condemned to the use and benefit of the United States.  *See* Dkt. No. 1.  The same day, the Clerk of Court issued a warrant for arrest of the Defendant Currency, *see* Dkt. No. 2, which was executed on October 17, 2023. *See* Dkt. No. 3.

On October 5, 2023, Plaintiff attempted to serve copies of the Verified Complaint, warrant for arrest, and notice to potential claimants on Harrison-Sanders at two of his last known addresses via certified and regular mail.  Dkt. No. 6; Dkt. No. 10-2 ¶ 3(a)-(b).  Certified return-receipt cards were returned to Plaintiff and marked by USPS as "return to sender, not deliverable as addressed, unable to forward."  *Id.*  On October 7, 2023, and for thirty consecutive days thereafter, Plaintiff

---

[2] These stacks consisted of four bundles of $1,000, one bundle of $1,080, and another of $1,020. *Id.* ¶ 21.

published public notice of this action on an official government forfeiture website, www.forfeiture.gov.  *See* Dkt. No. 5; Dkt. No. 10-2 ¶ 4.  On October 31, 2023, Plaintiff again attempted to serve copies of the Verified Complaint, warrant for arrest, and notice to potential claimants on Harrison-Sanders via certified mail—this time with an update to the apartment number of one of his two last known addresses—but the certified return-receipt card was again returned to Plaintiff and marked by USPS as "return to sender, not deliverable as addressed, unable to forward."  Dkt. No. 7; Dkt. No. 10-2 ¶ 3(c).

On December 11, 2023, Plaintiff requested an entry of default and submitted a supporting affidavit.  Dkt. Nos. 8, 8-1.  On December 19, 2023, the Clerk entered default of the Defendant Currency.  Dkt. No. 9.  On January 2, 2024, the instant Motion was filed.  Dkt. No. 10.  The same day, Plaintiff sent copies of the corresponding text notice (setting the motion response hearing deadline), as well as copies of the Motion papers (Dkt. Nos. 10 through 10-6) by certified and regular mail to Harrison-Sanders' last known address.  *See* Dkt. No. 11.

No verified claim or answer has been filed in this action, and the last date for potential claimants to file a claim was December 6, 2023.  *See* Dkt. No. 5.

## III.   STANDARD OF REVIEW

### A.  Default Judgment

Fed. R. Civ. P. Rule 55 "provides a two-step process that the Court must follow before it may enter a default judgment against a defendant."  *Robertson v. Doe,* 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'"  *Id.* (quoting Fed. R. Civ. P. 55(a)).[3]

---

[3] *See also* Northern District of New York Local Rule ("Local Rule") 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom

"Second, pursuant to Rule 55(b)(2), the party seeking [a] default judgment is required to present its application for entry of judgment to the court." *Id.* "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).[4]

Default judgments "are generally disfavored and are reserved for rare occasions." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Before a court enters a default judgment, it must "ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Windward Bora, LLC v. Brown*, No. 21-CV-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (quotation marks and citation omitted).

The decision to grant a motion for a default judgment is within "the sound discretion of the district court." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quotation marks and citation omitted). "When evaluating the defendant's liability, the court accepts as true all well-pleaded allegations in the complaint." *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, No. 22-CV-6474, 2024 WL 219092, at *2 (E.D.N.Y. Jan. 22, 2024) (citing *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019)). However, "the court cannot construe the damages alleged in the complaint as true," and the court must "conduct an inquiry in order to

---

it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded").

[4] *See also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

ascertain the amount of damages with reasonable certainty." *W. Coast Servicing, Inc. v. Giammichele,* No. 1:19-CV-1193 (GTS) (CFH), 2020 WL 5229374, at *2 (N.D.N.Y. Sept. 2, 2020) (quotation marks and citations omitted).

### B.  Forfeiture *in Rem*

"In rem forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," 18 U.S.C. § 981 *et seq*. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014).  "The Federal Rules of Civil Procedure also apply to [forfeiture *in rem*] proceedings except to the extent that they are inconsistent with the[ ] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-cv-5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017).

Under Supplemental Rule G, a complaint for forfeiture *in rem* must:

   a)  be verified;

   b)  state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the Defendant Currency, and venue;

   c)  describe the property with reasonable particularity;

   d)  if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

   e)  identify the statute under which the forfeiture action is brought; and

   f)  state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2).  Furthermore, "[i]f the defendant is not real property . . . the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control."  Supp. R. G(3)(b)(i).

Supplemental Rule G(4) sets forth the applicable notice requirements for forfeiture *in rem* actions:  the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days."  Supp. R. G(4)(a)(iv)(C).

Once the government has commenced a forfeiture *in rem* action, a claimant "who asserts an interest in the [Defendant Currency] may contest the forfeiture by filing a claim in the court where the action is pending."  Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197.  The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint."  See 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii).  "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim."  Supp. R. G(5)(b).  However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).  "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall

establish that there was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).

## IV.    DISCUSSION

### A.  Rule 55

As an initial matter, the Court must determine whether Plaintiff has complied with the procedural requirements for obtaining a default judgment under Rule 55 of the Federal Rules of Civil Procedure.  On December 11, 2023, Plaintiff requested a clerk's entry of default under Rule 55(a) and General Order #15, and Plaintiff submitted an affidavit affirming that (i) "[a]ll known potential claimants were served"; (ii) "public notice of this action was published on an official government forfeiture site . . . for thirty consecutive days"; (iii) Plaintiff "believes it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants[;] [s]uch claimants have been served with the pleadings in this action, and failed to plead or otherwise defend the action, as provided by the Supplemental Rules"; (iv) "[n]either a verified claim nor an answer has been filed in this action, and the last date for potential claimants to file a claim" had passed; and (5) "no person thought to have an interest in the [Defendant Currency] is an infant, incompetent, or presently engaged in military service."  Dkt. No. 8 ¶¶ 3-7.  Thus, on December 19, 2023, Plaintiff properly received a clerk's entry of default.  Dkt. No. 9.  Plaintiff then moved for default judgment and attached the clerk's certificate of entry of default, Dkt. No. 10-5, a proposed form of default judgment, Dkt. No. 10-4, a copy of the pleading to which no response has been made, Dkt. No. 10-6, and a supporting affidavit, Dkt. No. 10-2, in satisfaction of Local Rule 55.2(b).  Plaintiff has therefore complied with the procedural requirements of Rule 55 and Local Rule 55.2.

### B.  Supplemental Rule G

Because Plaintiff brings an action for forfeiture *in rem*, the Court must also examine whether Plaintiff complied with the requirements of the Supplemental Rules.  *See Vazquez-Alvarez*, 760 F.3d at 197.  In compliance with Supplemental Rule G(3)(b)(i), the Clerk issued a warrant to arrest the Defendant Currency.  Dkt. Nos. 2, 4.  And Plaintiff has complied with the notice requirements of Supplemental Rule G(4).  First, Plaintiff published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from October 7, 2023 through November 5, 2023, *see* Dkt. Nos. 5, 10-2 ¶ 4, in satisfaction of Supplemental Rule G(4)(a).  Additionally, Plaintiff satisfied Supplemental Rule G(4)(b) by attempting to provide direct notice to all known potential claimants by means reasonably calculated to reach the potential claimants.  *See* Supp. R. G(4)(b).  Namely, Plaintiff attempted to serve copies of the Verified Complaint, warrant for arrest of articles *in rem*, and notice to potential claimants on the only known potential claimant, Harrison-Sanders, at his last known addresses via certified and regular mail.  *See* Dkt. Nos. 6, 7, 10-2 ¶ 3(a)-(c).  Plaintiff also attempted to serve its motion papers and the briefing schedule on Harrison-Sanders via certified and regular mail.  *See* Dkt. No. 11.  This is sufficient to satisfy Supplemental Rule G(4).  *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) ("The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts known to the government,' and it may do so by any 'means reasonably calculated to reach the potential claimant.'" (quoting Supp. R. G(4)(b)(i), (iii)(A))).

Plaintiff must also satisfy the requirements of Supplemental Rule G(2).  The Verified Complaint is verified in satisfaction of Supplemental Rule G(2)(a), Dkt. No. 1 at 1, 6; states the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the Defendant Currency, and

venue in satisfaction of Supplemental Rule G(2)(b), *id.* ¶¶ 4-6; describes the property with

reasonable particularity in satisfaction of Supplemental Rule G(2)(c), *id.* ¶¶ 2, 21-22; states the

Defendant Currency's location when seizure occurred and when the action was filed in satisfaction

of Supplemental Rule G(2)(d), *id.* ¶¶ 21-22 and at 5; and identifies the statute under which the

forfeiture action is brought in satisfaction of Supplemental Rule G(2)(e). *Id.* at 1.

### C.  Sufficiency of the Verified Complaint

The Court must also determine whether the verified complaint "state[s] sufficiently

detailed facts to support a reasonable belief that the government will be able to meet its burden of

proof at trial," *see* Supp. R. G(2)(f),[5] and whether Plaintiff "[has] establish[ed] that there was a

substantial connection between [Defendant Currency] and the offense" on which Plaintiff's theory

of forfeiture is premised.  *See* 18 U.S.C. § 983(c)(3).  Because these questions both involve

examination of the sufficiency of the facts alleged in the Verified Complaint, the Court analyzes

them together.

Plaintiff premises its forfeiture *in rem* action on 21 U.S.C. § 881(a)(6).  *See* Dkt. No. 1 at

1.  Specifically, Plaintiff alleges that the Defendant Currency constitutes proceeds traceable to the

sale of narcotics.  *See id.* at 1, and ¶¶ 7, 27-28.

Under 21 U.S.C. § 881(a)(6),

---

[5] Although "a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint," a court "need not agree that the alleged facts constitute a valid cause of action." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citations and internal quotation marks omitted).  And the Second Circuit has "suggested that, prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." *Id.* (alterations, citation, and internal quotation marks omitted).  Accordingly, this Court "considers whether the unchallenged facts" alleged in the Verified Complaint "constitute a legitimate cause of action." *See United States v. Two Hundred & Eighty Thousand Dollars & Zero Cents, More or Less, in U.S. Currency*, No. 20-CV-4442, 2021 WL 2980540, at *2 (E.D.N.Y. July 14, 2021) (citation and internal quotation marks omitted).

"[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter"

are "subject to forfeiture to the United States."

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).  Under Supplemental Rule G(2)(f), the Verified Complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  And because Plaintiff's theory of forfeiture is that the Defendant Currency was used to commit or facilitate or was involved in the commission of an alleged violation of 21 U.S.C. §§ 841 and 846, the Government must "establish that there was a substantial connection between [Defendant Currency] and the [alleged violation of 21 U.S.C. §§ 841 and 846]."  18 U.S.C. § 983(c)(3).  However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D).

The Court finds Plaintiff has sufficiently pled a substantial connection between the Defendant Currency and drug trafficking.[6]  The amount at issue—$6,100 in a small binder in the vehicle glove compartment and $448 on Harrison-Sanders' person—is an unusually large sum of money to carry.  *See United States v. Gonzalez*, 922 F.2d 1044, 1056 (2d Cir.), *cert. denied*, 502 U.S. 1014, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991) (holding large amounts of cash is evidence of

---

[6] Plaintiff "need not prove that there is a substantial connection between the property and any specific drug transaction.  Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking." *United States v. $11,640.00 in U.S. Currency*, No. 7:13-CV-184 (TWD), 2014 WL 4217389, at *6 (N.D.N.Y. Aug. 25, 2014) (quoting *United States v. $22,173.00 in United States Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010)).

narcotics trafficking activities) (citations omitted); *see also United States v. $13,477.00 in U.S. Currency*, No. 00-CV-6215, 2002 WL 31190140, at *3 (S.D.N.Y. Sept. 13, 2022) (finding of $2,667 on person and $8,619 on living room table "not per se illegal, [but] at least unusual or suspect in the context of the underlying facts and 'readily falls into the category of circumstances in which wholly lawful conduct might justify the suspicion that criminal activity is afoot.'") (quoting *United States v. Whites Hill Road*, 916 F.2d 808, 813 (2d Cir. 1990)); *see also United States v. $32,507.00 in U.S. Currency*, No. 14-CV-5118, 2014 WL 4626005, at *2 (S.D.N.Y. Sept. 16, 2014) ("Carrying large sums of cash is not per se evidence of drug-related illegal activity, but it is suggestive of involvement in illegal activity more generally.") (citations and quotation marks omitted).  Moreover, the Defendant Currency was arranged in bundles, wrapped in rubber bands, and concealed in a small binder, which are characteristics "common when transporting drug money, and courts have relied on them as evidence of a connection to the drug trade." *$32,507.00 in U.S. Currency*, 2014 WL 4626005 at *2 (collecting cases).

Plaintiff also alleged other substantial connections between the Defendant Currency and drug trafficking—namely:  (i) the evidence of a digital scale with narcotic residue on its surface; (ii) the detection of narcotics by a drug-sniffing K9; and (iii) Harrison-Sanders' shifting story regarding his presence at the 30 Davis Street residence (a known residence associated with the drug trade).  *See, e.g.*, *$22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 250 (sufficient facts to demonstrate that money had a "substantial connection to drug trafficking," when a "large amount of cash [was] found . . . in close proximity to [] drugs and drug paraphernalia"); *United States v. Johnson*, 660 F.2d 21, 22 (2d Cir. 1981) (K9 identification considered one of a "variety of factors indicating that [the defendant] might have been transporting drugs."); *U.S.A. v. $175,260*, 741 F.

Supp. 45, 48 (E.D.N.Y. 1990) (misleading DEA agents considered factor in analyzing merits of forfeiture action).

Plaintiff has met its burden to establish that the Defendant Currency is subject to forfeiture. *See* 18 U.S.C. §§ 983(c)(1), 983(c)(3); *see also* Supp. R. G(2)(f); 18 U.S.C. § 981(a)(1)(A). Accordingly, Plaintiff's Motion is granted.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for Default Judgment and Final Order of Forfeiture, Dkt. No. 10, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order, as well as the forthcoming Final Order of Forfeiture, on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 18, 2024
        Albany, New York

Anne M. Nardacci
U.S. District Judge